United States District Court
Southern District of Texas
**ENTERED**
February 09, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Ricardo Gonzalez Garza, § § § *Plaintiff,* § § v. § § Kilolo Kijakazi, § Acting Commissioner of Social § Security Administration,[1] § § *Defendant.* § | Case No. 4:22-cv-03287 |

## MEMORANDUM AND RECOMMENDATION

This appeal from an administrative ruling denying social security benefits was referred to the undersigned judge. Dkt. 13. After carefully considering the parties' briefs, the administrative record, Dkts. 6-11, and the applicable law, it is recommended that Defendant's motion for summary judgment (Dkt. 16, 17) be granted and Plaintiff Ricardo Gonzalez Garza's motion for summary judgment (Dkt. 15) be denied.

## Background

Garza filed for social security benefits under Title II, claiming a disability onset date of November 1, 2020. R.11, R.707. Before filing for

---

[1] Although Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023, no request to substitute him as Defendant has been filed.

benefits, Garza worked as a medic in the U.S. Army for twenty years, although he served as a technical training instructor during his last year of service. R.752; R.454-55, 459. Upon his retirement on November 1, 2020, Garza was approved for a military disability pension. R.453-54; R.542.

In his application before the Social Security Administration, Garza claimed he suffered from obstructive sleep apnea, temporomandibular joint disorder; plantar fasciitis; post-traumatic stress disorder (PTSD); cervical strain; degenerative arthritis of the spine; diabetes mellitus type II; lateral epicondylitis in both elbows; diabetic peripheral neuropathy; right knee strain; shin splints; "left and right shoulder;" right hip strain; degenerative arthritis of the spine; bilateral carpal tunnel; and back issues. R.744.

Garza's claim was denied initially and upon reconsideration. R.560, 567. Garza then requested and obtained a hearing before an administrative law judge ("ALJ"). R.580. After the hearing, the ALJ issued an adverse decision denying Garza's benefits. R.537-51.

When formulating Garza's residual functional capacity ("RFC"), the ALJ considered the findings of state agency medical consultants Cynthia Linardos, MD, and Patty Rowley, MD. R.549. The ALJ did not, however, explicitly outline his evaluation of Dr. Linardos's opinion, believing those findings were replaced by Dr. Rowley's review of Garza's case upon reconsideration. *Id.*; R.525-27 (disability determination explanation at the reconsideration level).

Garza appealed the decision, R.632-33, and the Appeals Council reversed and remanded the case, directing the ALJ to resolve two issues: (1) to discuss the admissibility of evidence received after the hearing but before the decision was issued; and (2) to consider Dr. Linardos's administrative medical findings and evaluate their persuasiveness. R.556-58.

On remand, the ALJ held another hearing during which he considered the new evidence and admitted it into the record. R.469-70 (admitting Exhibit 13F). At the hearing, Garza testified that his spinal issues, carpal tunnel syndrome in both hands, plantar fasciitis in both feet, and PTSD rendered him disabled. R.472, 476, 478-79, 481. The ALJ questioned Garza regarding these conditions and his course of treatment. R.472-80, 492. Garza's attorney identified medical records that allegedly indicated the impairments, including problems with his right shoulder and left knee, were disabling. R.481-90.

In response to the ALJ's questions, the VE testified that a person with an RFC at a light exertional level who is also limited to frequent handling and fingering bilaterally could perform Garza's past relevant work as a technical training instructor. R.497. The VE further indicated that such a person could also perform other jobs, like a sales attendant and storage facility rental clerk, that exist in significant numbers in the national economy. R.497-98. But the VE testified that none of the foregoing jobs could be performed by an individual whose fingering and handling were reduced to an occasional level. R.498.

Once more, the ALJ issued a decision denying Garza's disability application. R.11-25. The ALJ found that Garza had met the insured status requirements and had not engaged in substantial gainful activity since November 1, 2020—the day Garza retired. R.14. The ALJ concluded Garza's lumbar and cervical spine disorder, bilateral carpal tunnel syndrome, right shoulder disorder, and left knee issues were severe impairments. R.15.

After finding that Garza's impairments or combination of impairments do not meet or medically equal a listed impairment, the ALJ turned to formulating Garza's RFC. R.17. Taking into account the relevant medical records and evaluating the opinions of Dr. Linardos and Dr. Rowley, the ALJ concluded that Garza can

> do work activity at the light exertional level[,] …. lift and/or carry 20 pounds occasionally, 10 pounds frequently; can stand and/or walk 6 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday[,] … only frequently climb, balance, kneel, crouch, or crawl; only occasionally stoop; only occasionally reach overhead with the right upper extremity; and only frequently handle or finger bilaterally.

*Id.* Applying this RFC at step four, the ALJ found that Garza can perform his past relevant work as a technical training instructor. At step five, the ALJ concluded that Garza could also work in other positions that exist in significant numbers in the national economy, namely the positions of sales attendant and storage facility rental clerk. R.24. Therefore, the ALJ determined that Garza does not qualify as disabled. R.25.

4

Garza appealed the ALJ's determination to the Social Security Appeals Council, which denied review.  R.1.  This appeal followed. Dkt. 1.

### **Legal standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotations omitted).  The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight

5

of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

**II.     The ALJ's decision is supported by substantial evidence.**

Garza contends that the ALJ failed to properly consider all the record evidence when forming the RFC. Dkt. 15 at 6, 14-17. Specifically, Garza alleges that medical records regarding his severe bicarpal tunnel syndrome reflect he was limited to "occasional" fingering and handling rather than "frequent," as the RFC reflected. *Id.* at 6-7. This, Garza argues, tainted the ALJ's inquiry into Garza's ability to work, as the VE testified that someone limited to occasional fingering and handling could not perform any positions available in significant numbers in the national economy. *Id.* at 12.

On the other hand, the Commissioner maintains that the record belies Garza's claims. Dkt. 17 at 5. The Commissioner maintains that the medical evidence discussed in the ALJ's decision, as well as Garza's self-reported abilities, show that Garza has no issues with frequent bilateral fingering and handling. *Id.* at 7-8. The Court addresses these contentions in turn.

**A.     The ALJ properly considered all the evidence of record when formulating Garza's RFC.**

An applicant's RFC is defined as "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545. "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2). In determining the RFC, the ALJ examines all medical

7

evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record"). But "[t]he ALJ is not required to incorporate limitations in the RFC that [he] did not find to be supported by the record." *Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (internal quotation marks omitted).

As both parties noted, the ALJ found Garza's statements about the intensity, persistence, and limiting effects of his carpal tunnel symptoms were not entirely consistent with the evidence. Dkt. 15 at 11; Dkt. 17 at 5; R. 18-19. For instance, during a December 2020 examination, Garza showed "no distress" and exhibited a strength of "5/5 in all extremities." R.19 (citing R.4420-21 as 7F89). Although some examinations from December 2020 through November 2021 revealed tenderness and decreased range of motion, Garza consistently showed 5/5 graded muscle strength of wrist and finger flexors and extensors including the hand intrinsics. R.4421, 5042, 5151, 5264, 5331 (cited in ALJ's opinion as 7F90, 12F9, 14F7, 15F74, 17F37). And as recently as January 2022, Garza again had no distress and 5/5 strength in his hands and wrists. R.5111.

Notwithstanding the records specified above, Garza asserts that the ALJ "failed to cite *any* reference" as to his carpal tunnel syndrome's stability and alleges that the medical evidence "indicates a worsening of his bilateral

8

numbness and tingling." Dkt. 15 at 11 (citing R.4469, May 2021 consultation). But this only tells part of the picture. As the ALJ noted, Garza did report that his numbness and tingling were worsening during a May 2021 examination with Gautham Prabhakar, MD. R.19 (discussing R.4469-70). Dr. Prabhakar's examination revealed that Garza had diminished sensation on both hands and "tenderness to palpation of the wrists." R.4470. Garza then underwent electromyography testing that indicated moderate left carpal tunnel syndrome and moderate to severe carpal tunnel on the right side. R.4537.

But during a June 2021 surgical evaluation, Dr. Ezekial Koslosky found that all of Garza's medial, radial, PIN, AIN, and ulnar nerves were intact, as well as his flexors and extensors. R.4519). Dr. Koslosky ordered surgery on Garza's left hand, R.4520, but the surgery was canceled due to Garza's high A1C levels indicating uncontrolled diabetes. R. 5059. Even still, in June 2022, Garza denied feeling any numbness and tingling. R.207. It was the ALJ's job to weigh this conflicting evidence. *See Perez*, 415 F.3d at 461 (a court cannot "reweigh the evidence or substitute its judgment for the Commissioner's").

The foregoing records also show that the ALJ had an adequate basis for rejecting Dr. Linardos's opinion that Garza is limited to occasional fingering and handling. *See* Dkt. 15 at 12. The ALJ fully addressed and evaluated Dr. Linardos's opinion, as instructed by the Appeals Council, finding the opinion was not fully consistent with the record. R.22. The ALJ found Dr. Linardos's

9

opinion partially persuasive, concurring that Garza was limited to light work. R.22. But the ALJ disagreed with Linardos's finding that Garza was limited to occasional handling and fingering because Garza had "not undergone surgery" and his "carpal tunnel had remained stable without significant worsening." *Id.* The ALJ therefore concluded that limiting Garza to "frequent … handling[] and fingering is more consistent with the record." *Id.* (citing R.5059 as 13F16, September 2021 consultation where physical therapist noted Garza's hand surgery cancellation due to uncontrolled diabetes). At the same time, the ALJ declined to adopt the findings of Dr. Rowley, who opined that Garza did not require *any* limitations in handling and fingering. *See* R.22-23; R.527 (Rowley's rating of Garza's handling and fingering as "unlimited").

"Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *See Taylor*, 706 F.3d at 602-03. This includes the responsibility of determining whether a given physician's opinion is persuasive. *See* 20 C.F.R. § 404.1520c(a) (explaining that the ALJ does not defer to any medical opinions or prior administrative medical filings); *see also Miller v. Kijakazi*, 2023 WL 234773, *4 (5th Cir. Jan. 18, 2023) (per curiam) (the ALJ is not required to "adopt a specific physician's assessment"). Here, the ALJ "relied on the medical evidence in the record" to formulate an RFC that is "supported by substantial evidence." *See Ronda C. v. Berryhill*, 2018 WL 4658504, *12 (N.D. Tex. Sept. 7, 2018) (concluding that

limiting a teacher's aide to frequent fingering and handling was supported by the record despite her numbness and tingling resulting from severe carpal tunnel syndrome), *adopted by* 2018 WL 4637292 (N.D. Tex. Sept. 26, 2018).

In fact, Garza's own statements further demonstrate that he can frequently handle and finger bilaterally. As the Commissioner correctly observes, Garza reported being able to shower and dress himself; prepare his own meals and feed himself; mow and water the lawn; feed and care for his pets; clean and make repairs to his home; text on his phone; and drive himself as needed and his daughter to and from work four days a week. Dkt. 17 at 7; R.761-64; R.4425. His wife also reported that Garza can vacuum, fold towels, hang up clothes, use the computer, and play cards and chess. R.770-72. Garza's ability to perform these daily tasks supports the ALJ's conclusion that he can frequently finger and handle items. *See, e.g.*, *Simoneaux v. Astrue*, 2010 WL 3717291, at *4-6 (M.D. La. Sept. 9, 2010) (ALJ did not err in concluding that claimant can frequently handle and finger based partly on claimant's ability to dress herself, drive, and prepare breakfast).

This is not a case where the ALJ considered "only the evidence that supports his position," as Garza maintains. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Nor does the record indicate that "the ALJ needed any more medical information to reach an informed decision about whether [Garza] was disabled." *See Webster*, 19 F.4th at 720. Rather, the ALJ properly

11

considered all the evidence when concluding that Garza can frequently finger and handle items, as specified in the RFC. *See Wycoff v. Berryhill*, 2019 WL 699995, *3 & n.7, *12 (S.D. Tex. Feb. 19, 2019) (RFC limiting claimant to frequent fingering and handling was proper where physical examination of hands and wrists were "essentially normal," exhibiting 5/5 motor strength); *Daniels-Davis v. Comm'r of Soc. Sec.*, 2014 WL 3955617, at *6-7 (E.D. Tex. Aug. 12, 2014) (substantial evidence supported frequent handling and fingering limitations; treatment records showed normal grip strength).

### B. The ALJ did not err when posing hypotheticals to the VE that tracked limitations ultimately adopted in the RFC.

The conclusion that the ALJ did not err when forming the RFC defeats Garza's interrelated challenges at steps four and five of the analysis. According to Garza, the ALJ's hypothetical question to the VE regarding the jobs that Garza could perform was flawed because it did not incorporate all of Garza's limitations. Dkt. 15 at 14-15. This contention presupposes that Garza was more limited in his ability to finger and handle than what the ALJ concluded. As explained above, however, the ALJ had a sufficient basis to conclude that Garza could frequently handle and finger items. *See supra* Part II.A. Because the ALJ's questions to the VE tracked that conclusion, *see* R.497, Garza cannot show that the ALJ erred. *See Lafleur v. Colvin*, 540 Fed. App'x 263, 267 (5th Cir. 2013) (per curiam) (hypothetical question was not flawed

because its underlying RFC findings were supported by substantial evidence). Accordingly, the ALJ properly concluded, based on the VE's testimony, that Garza's limitations do not foreclose him from performing either his prior job as a technical training instructor or other work as a sales attendant or storage facility rental clerk. *See* R.24-25; *see also* R.497-98 (VE's testimony). The ALJ's decision to deny disability benefits should be affirmed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Martin O'Malley's Motion for Summary Judgment (Dkt. 16, 17) be **GRANTED**, and that Plaintiff Ricardo Gonzalez Garza's Motion for Summary Judgment (Dkt. 15) be **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 9, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge